IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| JUSTIN M. GIBSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 14-1023-CV-C-DGK |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**ORDER AFFIRMING THE COMMISSIONER'S DECISION**

Plaintiff Justin M. Gibson petitions for review of an adverse decision by Defendant, the Acting Commissioner of Social Security ("Commissioner"). Plaintiff applied for supplemental security income under Title XVI of the Act, 42 U.S.C. §§ 1381–1383f. The administrative law judge ("ALJ") found Plaintiff had multiple severe impairments, including attention deficit hyperactivity disorder ("ADHD") and borderline intellectual functioning, but retained the residual functional capacity ("RFC") to perform work as a change house attendant, salvage laborer, or commercial cleaner.

As explained below, the Court finds the ALJ's opinion is supported by substantial evidence on the record as a whole. The Commissioner's decision is therefore AFFIRMED.

**Procedural and Factual Background**

The complete facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

Plaintiff formerly received supplemental security income benefits based on disability as a child. After Plaintiff turned eighteen, it was determined that he was no longer disabled as of April 15, 2012. Plaintiff filed the pending application on November 27, 2012, alleging a

disability onset date of April 15, 2012.  The Commissioner denied the application at the initial claim level, and Plaintiff appealed the denial to an ALJ.  On June 26, 2013, the ALJ held a hearing and on August 14, 2013, the ALJ issued a decision finding Plaintiff was not disabled.  The Appeals Council denied Plaintiff's request for review on September 18, 2014, leaving the ALJ's decision as the Commissioner's final decision.  Plaintiff has exhausted all administrative remedies and judicial review is now appropriate under 42 U.S.C. § 1383(c)(3).

## Standard of Review

A federal court's review of the Commissioner's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015).  Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision.  *Id.*  In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it.  *Id.*  The court must "defer heavily" to the Commissioner's findings and conclusions.  *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015).  The court may reverse the Commissioner's decision only if it falls outside of the available zone of choice; a decision is not outside this zone simply because the evidence also points to an alternate outcome.  *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011).

## Discussion

The Commissioner follows a five-step sequential evaluation process[1] to determine whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by

---

[1] "The five-step sequence involves determining whether (1) a claimant's work activity, if any, amounts to substantial gainful activity; (2) his impairments, alone or combined, are medically severe; (3) his severe impairments meet or medically equal a listed impairment; (4) his residual functional capacity precludes his past relevant work; and (5) his residual functional capacity permits an adjustment to any other work.  The evaluation process ends if a

2
Case 4:14-cv-01023-DGK   Document 29   Filed 03/21/16   Page 2 of 10

reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A).

Plaintiff argues that the ALJ improperly: (1) failed to find Plaintiff met Listing 12.05; (2) weighed the medical evidence; (3) formulated a hypothetical for the vocational expert ("VE"); and (4) determined that Plaintiff could perform work existing in significant numbers in the national economy at Step Five. These arguments are without merit.

> **I. Substantial evidence supports the ALJ's finding that Plaintiff's impairments did not meet or medically equal any of the impairments listed in Appendix 1.**

Plaintiff first argues that the ALJ erred in failing to find Plaintiff met the requirements of Listings 12.05B and 12.05C, two listings governing mental retardation.[2] Pl.'s Br. 10-11 (Doc. 9). The ALJ only explicitly considered Listing 12.02 ("Organic Mental Disorders"), which she identified as the listing most closely related to Plaintiff's severe impairments of ADHD and borderline intellectual functioning. R. at 12-13. Defendant argues that the record supports the implicit conclusion that Plaintiff did not meet any listing, including Listings 12.02, 12.05B, and 12.05C. Def.'s Br. 15-18 (Doc. 12).

At Step Three, the Plaintiff must show that his impairment or combination of impairments meet or equal all of the specified criteria in a listing. *See Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004). Under Listing 12.05, a claimant must meet both the capsule definition of the listing and at least one of the four severity prongs. *See Maresh v. Barnhart*, 438

---

determination of disabled or not disabled can be made at any step." *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 632 n.1 (8th Cir. 2014); *see* 20 C.F.R. § 416.920(a)–(g). Through Step Four of the analysis the claimant bears the burden of showing that he is disabled. After the analysis reaches Step Five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009).

[2] Effective September 3, 2013, the Social Security Administration substituted "intellectual disability" for "mental retardation" in the listings. Change in Terminology, 78 Fed. Reg. 46499 (Aug. 1, 2013). Because the ALJ rendered his decision before the change in terminology, the parties use the term mental retardation. For the sake of consistency, the Court also uses this term.

F.3d 897, 899 (8th Cir. 2006). Listing 12.05 requires a threshold showing that the claimant suffers from "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period [i.e., before the age of twenty-two]." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05. Then, the claimant must show he has met the requirements of one of the severity prongs. Prong B requires a "valid verbal, performance, or full scale IQ of 59 or less," and prong C requires a "valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id.* §§ 12.05B, 12.05C.

The Court first analyzes whether the record supports a conclusion that Plaintiff failed to meet the capsule definition of Listing 12.05. *See Boettcher v. Astrue,* 652 F.3d 860, 863 (8th Cir. 2011) ("There is no error when an ALJ fails to explain why an impairment does not equal one of the listed impairments as long as the overall conclusion is supported by the record."); *Pepper ex rel. Gardner v. Barnhart*, 342 F.3d 853, 855 (8th Cir. 2003) ("Although it is preferable that ALJs address a specific listing, failure to do so is not reversible error if the record supports the overall conclusion."). Here, the record indicates that Plaintiff suffered from subaverage general intellectual functioning before the age of twenty-two—he was receiving social security benefits for mental retardation and ADHD from the age of thirteen until the age of eighteen. R. at 59 (determination of disability in 2007), 61 (cessation of disability benefits in 2012), 572 (childhood disability evaluation form indicating mental retardation, ADHD, and bipolar disorder as impairments). However, in the years following the 2007 disability finding, the record demonstrates that Plaintiff had only moderate limitations in adaptive functioning: he independently traveled to his high school by walking or taking the bus, shopped for his own clothing, and planned to attend a vocational trade school. R. at 91. He achieved the honor of

4

Eagle Scout, participated in high school sports, and graduated from high school. R. at 34, 42, 45. These activities are inconsistent with a finding of significantly subaverage general intellectual functioning and deficits in adaptive functioning. *See Johnson v. Colvin*, 788 F.3d 870, 873 (8th Cir. 2015) (finding that a claimant's abilities to read, write, count change, care for herself and her son, and perform most household tasks were inconsistent with the deficits in adaptive functioning contemplated by Listing 12.05); *Cheatum v. Astrue*, 388 F. App'x 574, 577 (8th Cir. 2010) (finding that claimant failed to establish the deficits in adaptive functioning required by Listing 12.05 where claimant was able to perform activities of daily living and light housework, drive a car, help prepare meals, and care for her ailing father). Further, the record indicates that Plaintiff had a valid IQ score of seventy-one in 2010, when he was sixteen years old.[3] R. at 209. This score is above the ranges required for both Listing 12.05B and 12.05C.

Because the record supports the ALJ's implicit finding that Plaintiff did not meet Listings 12.05B or 12.05C, the ALJ's finding at Step Three was not in error.

> **II. The ALJ properly weighed the medical evidence in determining Plaintiff's RFC.**

Next, Plaintiff argues that the ALJ erred in giving little weight to the opinions of Plaintiff's treating physician, Dr. Parimal Purohit, M.D. ("Dr. Purohit"). Pl.'s Br. 11-16. Dr. Purohit filled out a mental RFC capacity assessment and a mental impairment evaluation form

---

[3] Plaintiff also argues that the ALJ committed reversible error by failing to order an adult IQ test. Instead, the ALJ relied on Plaintiff's social and scholastic accomplishments, future plans for education and job training, and his Global Assessment of Functioning test scores in her disability determination. R. at 13. Because the record of Plaintiff's IQ was sufficiently developed, the ALJ did not commit reversible error by denying Plaintiff's request for an IQ test. *See Johnson v. Astrue*, 627 F.3d 316, 320 (8th Cir. 2010) (holding failure to request IQ test not in error where the record contained plaintiff's IQ score from a test administered at age sixteen, and plaintiff's daily activities and ability to answer academic questions suggested an IQ test was not warranted); *Clay v. Barnhart*, 417 F.3d 922, 929 (8th Cir. 2005) ("We have emphasized in the past that IQ scores must be valid, that the Commissioner need not rely exclusively on IQ scores, and that the Commissioner may disregard test scores that are inconsistent with an applicant's demonstrated activities and abilities as reflected in the record as a whole."); 20 C.F.R. pt. 404, subpt. P, app. 1, § 112.05(D)(10) ("Generally, the results of IQ tests tend to stabilize by the age of 16. Therefore, IQ test results obtained at age 16 or older should be viewed as a valid indication of the child's current status, provided they are compatible with the child's current behavior.").

for Listings 12.04 and 12.06.  R. at 676-83.  On those forms, Dr. Purohit checked the box indicating a "marked" limitation next to "[d]ifficulties in maintaining concentration, persistence, or pace" and "[r]epeated episodes of decompensation, each of extreme duration," among other things.  R. at 676-83.  Dr. Purohit did not respond to the mental RFC questionnaire's prompt for a narrative explanation of the clinical observations and tests used in making his determination.  R. at 678.

"[A] treating physician's opinion is generally entitled to substantial weight; however, such an opinion does not automatically control in the face of other credible evidence on the record that detracts from that opinion." *Martise v. Astrue*, 641 F.3d 909, 925 (8th Cir. 2011) (internal quotations and citation omitted).  "Moreover, an ALJ may credit other medical evaluations over that of the treating physician when such other assessments are supported by better or more thorough medical evidence."  *Id.*  "An ALJ may justifiably discount a treating physician's opinion when that opinion is inconsistent with the physician's clinical treatment notes" or when the physician's "opinions are inconsistent or contrary to the medical evidence as a whole."  *Id.*  Whatever weight the ALJ decides to give a physician's opinion, he must "always give good reasons."  20 C.F.R. § 416.927(c)(2).

Here, substantial evidence on the record supports the ALJ's decision to give little weight to Dr. Purohit's opinions that Plaintiff has several marked limitations.[4]  First, the opinions expressed in the check-box forms are inconsistent with his earlier treatment notes.  R. at 584 (indicating Plaintiff's "inter[]action with family members and other peers has been improving" and Plaintiff was "doing well on his grade report"), 586 (indicating that, three months later, Plaintiff was "doing relatively well" and Plaintiff's "grades ha[d] been getting better").

---

[4] The ALJ did not give less weight to *all* of Dr. Purohit's opinions.  R. at 18.  Specifically, the ALJ gave little weight to Dr. Purohit's mental RFC assessment form and the mental impairment evaluation form for Listings 12.04 and 12.06.  R. at 18 (discounting only Dr. Purohit's opinions that the Plaintiff has several marked limitations), 677, 680.

6

Second, Dr. Purohit's check-box form opinions are inconsistent with the opinions of Dr. Mark Altomari, Ph.D. ("Dr. Altomari"), Dr. Stanley Hutson, Ph.D. ("Dr. Hutson"), and Dr. Shahbaz Khan, M.D. ("Dr. Khan"). Both Dr. Altomari and Dr. Hutson, after a review of Plaintiff's medical records, expressed the opinion that his functional limitations were moderate at most. R. at 591-92, 602, 617, 621. These opinions are supported by the progress notes of Dr. Khan, who appears to be a treating physician in the same office as Dr. Purohit. For example, Dr. Khan expressed that Plaintiff's attention and concentration at school and home was "adequate" with "no complaints." R. at 579. Dr. Khan further observed that Plaintiff had "[n]o formal thought disorder" and was "[p]olite and cooperative." R. at 582-83.

Third, the ALJ considered Plaintiff's Global Assessment of Functioning ("GAF")[5] scores, along with the other medical evidence, in discounting Dr. Purohit's evaluations. R. at 13. While reliance on GAF scores is generally disfavored, the scores "may still be used to assist the ALJ in assessing the level of a claimant's functioning." *Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010). The ALJ noted that Plaintiff's GAF scores were inconsistent with Dr. Purohit's findings of marked limitations. R. at 16 (noting Plaintiff's GAF scores included a one-time low of fifty, but most often ranged between sixty-five and seventy, indicating the low end of moderate to mild symptoms). Because the ALJ did not rely solely on the GAF scores to discount Dr. Purohit's evaluation, her reliance was not in error. *See Halverson*, 600 F.3d at 931 (finding ALJ's decision to not rely on one outlier GAF score was supported by substantial evidence where a history of GAF scores between fifty-two and sixty indicated claimant had only moderate symptoms).

---

[5] The GAF is a numeric scale ranging from zero to one hundred, representing the clinician's judgment of the individual's overall level of functioning, not including impairments due to physical or environmental limitations. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32-34 (4th ed. rev. 2000).

Given that these particular opinions of Dr. Purohit are inconsistent with the medical evidence as a whole, the ALJ did not err in assigning them less weight than the other medical opinions available.

### III. The ALJ posed a properly-phrased hypothetical to the VE.

Next, Plaintiff argues that the ALJ's hypothetical was flawed because it did not adequately account for Plaintiff's limitations in concentration, persistence, and pace. Pl.'s Reply 8 (Doc. 23).

A hypothetical question posed to the VE "must precisely describe a claimant's impairments." *Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001). Testimony from a VE based on a properly-phrased hypothetical question constitutes substantial evidence. *Id.* While the question must describe the claimant's impairments, "it need not use specific diagnostic or symptomatic terms where other descriptive terms can adequately define the claimant's impairments." *Id.* (internal quotations omitted). It is not acceptable for an ALJ to simply limit the hypothetical to "simple jobs" where the Plaintiff has the moderate limitations of concentration, persistence, or pace. *See Newton v. Chater*, 92 F.3d 688, 695 (8th Cir. 1996). However, a hypothetical including the ability "to do only simple routine repetitive work, which does not require close attention to detail" and an inability to work at more than a regular pace sufficiently describes these particular limitations. *Brachtel v. Apfel*, 132 F.3d 417, 421 (8th Cir. 1997).

Here, the ALJ's hypothetical limited Plaintiff to "simple, routine, and repetitive tasks in a work environment free of fast-paced production requirements" and "involving only simple, work-related decisions, with few, if any, workplace changes." R. at 53. First, the assertion that Plaintiff is capable of doing only simple work adequately accounts for the finding of borderline

8
Case 4:14-cv-01023-DGK   Document 29   Filed 03/21/16   Page 8 of 10

intellectual functioning. *See Howard*, 255 F.3d at 582. Second, as discussed above, the ALJ properly weighed the medical evidence and found that Plaintiff had only moderate—not marked—limitations in concentration, persistence, or pace. R. at 14. This was accounted for in the hypothetical limiting Plaintiff to "routine . . . repetitive tasks in a work environment free of fast-paced production requirements." *See Brachtel*, 132 F.3d at 421; *cf. Rojas v. Colvin*, No. 4:15-CV-00004-ODS-SSA, 2015 WL 9901286, at *2 (W.D. Mo. Jan. 13, 2015) (holding that a hypothetical limiting claimant to "simple, unskilled" work was inadequate where ALJ failed to address claimant's moderate limitations in concentration, persistence, or pace). These limitations were further accounted for when the ALJ limited him to "occasional interaction with the public" and "only occasional interaction with co-workers." R. at 53; *see Turman v. Astrue*, No. 11-0740-CV-W-DGK-SSA, 2012 WL 4416387, at *2 (W.D. Mo. Sept. 25, 2012) (finding ALJ properly accounted for limitations in concentration, persistence, and pace by restricting claimant to jobs involving short, simple instructions and limited contact with the general public). Because the ALJ's hypothetical properly encompassed Plaintiff's limitations, Plaintiff's argument is without merit.

Last, Plaintiff argues he cannot perform the jobs identified by the VE. His argument is based an assertion that the ALJ incorrectly assessed Plaintiff's limitations. Because the Court found the ALJ's hypothetical properly encompassed Plaintiff's limitations, this argument is without merit.[6]

---

[6] Plaintiff contends the VE testimony was also flawed in that each of the jobs she selected required the ability to carry out "detailed instructions." Pl.'s Br. 20. This is not inconsistent with the ALJ's hypothetical. The ALJ did not limit "simple" job instructions to one- or two-step instructions or otherwise indicate Plaintiff could perform only occupations requiring level one reasoning. *See Moore v. Astrue*, 623 F.3d 599, 604-05 (8th Cir. 2010) (holding that there was no direct conflict between VE's testimony that claimant could perform level two reasoning jobs and the ALJ's hypothetical limiting claimant to "simple, routine, and repetitive work activity"); *Dictionary of Occupational Titles*, app. C, 1991 WL 688702 (4th ed. rev. 1991) (describing reasoning level two as an indication that claimant can "carry out detailed but uninvolved written or oral instructions").

## Conclusion

Because substantial evidence on the record as a whole supports the ALJ's opinion, the Commissioner's decision denying benefits is AFFIRMED.

**IT IS SO ORDERED.**

Date:  March 21, 2016             /s/ Greg Kays
                                                 GREG KAYS, CHIEF JUDGE
                                                 UNITED STATES DISTRICT COURT